Good morning. Thank you. I'm sorry that we had some technical difficulties that have delayed the start of court today, but we are now ready to move forward. And I think we can see everybody in here. Everybody that need to be seen and heard. Our first case for today is 2019 30469 United States v. Alfred Montgomery, III. Ms. Rhodes, you may proceed. Thank you, Your Honor. May it please the court. Good morning. My name is Celia Rhodes with the Federal Public Defender's Office, and I represent Mr. Montgomery. This appeal raises two issues, one related to Mr. Montgomery's sentence and the other related to his guilty plea. With the court's permission, I'd like to begin with the ACCA sentencing question and then move to the recent issue. For Mr. Montgomery to be subject to ACCA's 15-year mandatory minimum, his conviction under Louisiana's burglary statute, 1462.2, must categorically qualify as generic burglary as the Supreme Court has defined that term. Now, our briefing raises a number of issues related to that question, but I actually think this case can boil down to a really narrow issue because the government seems to agree with us that generic burglary requires, at the very least, entering into buildings or structures that are otherwise enclosed. And that reflects the Supreme Court's language in Shepard that ACCA only includes burglary if it's committed in a building or an enclosed space. How do you distinguish U.S. versus Stitt? Sure, Your Honor. So I think that Stitt goes more to the question of other structures on a property. So I think that to divide up the issues, there's two distinguishing features about Louisiana law, and three, actually, that make this broader than generic burglary. So one is this issue of unenclosed spaces. Another is an issue of non-dwelling structures, so non-typical buildings that also aren't used for dwellings. And the third is aiding and abetting. So the government's argument is that Stitt forecloses that second issue, the structures that are near dwellings, but I don't think Stitt quite forecloses that issue. In the portion of the decision cited by the government, which is a really brief discussion, the court was responding to the petitioner's argument that vehicles next to a house might be included in Tennessee burglary. So not necessarily vehicles used for accommodation, which the court held to be the limit in Stitt. And the court just said that's not how we read the statute. The pertinent language in the Tennessee statute doesn't apply to vehicles, so a car parked in a driveway wouldn't be included. So this issue about things like sheds and other structures doesn't seem to be squarely raised in Stitt. And that case was about vehicles used as dwellings, so not nearby structures. And the court certainly didn't look at underlying Tennessee case law or define what's acceptable in terms of pertinence. And I should note that Stitt had nothing to do with the issue of — sorry, Your Honor? I'm sorry, you go ahead and finish answering. You're talking about the case still. Go ahead. Sure. I was just going to say that Stitt didn't relate to unenclosed spaces, which I see more as a Shepard issue. So Shepard's saying that ACCA only includes burglary if it's committed in a building or an enclosed space. So regardless of how this court reads Stitt, and I agree that that's a harder question, considering Stitt's language, this issue of enclosed buildings near a dwelling. But Stitt didn't override, certainly, Shepard's limitation on burglary that it has to be an enclosed space. And under Louisiana case law collected in Mitchell, burglary encompasses merely walking into a carport, which is described in Mitchell as a construction consisting of four posts, so no walls unenclosed. And that's in accord with Louisiana's definition of the term structure for burglary purposes, which, unlike the Supreme Court's description in Shepard, doesn't include the qualifier of enclosure. But why isn't that a pertinent to or connected with, as Stitt said was okay? I think it is potentially connected with, though it's described in Mitchell as a separate structure, and then there's metal sheeting just protecting the gap in between from rain. But that doesn't change the fact that even if a connected structure is included, that structure still needs to be enclosed, and that's under Shepard. So even if we include things like garages, I think that that's the classic example, is if there's a connected garage, that's still an enclosed space. And so Louisiana law departs from the Shepard understanding that enclosed spaces can't be included. And I think that that makes sense, that this type of conduct would be excluded, walking into an unenclosed space. So walking unenclosed. I think that the point that the Supreme Court has made recently in Stitt et al. is the notion that what you're trying to deal with is the likelihood of a violent encounter. If I leave my car out on the street tonight, somebody breaks into it, they're unlikely to encounter me. On the other hand, breaking into a house, however determined, my carport, my house, my attached shed, I'm more likely to be there than in just a car that's parked somewhere. So that's why they said vehicles that are used for habitation do meet the standard, which is something that our en banc court did not think was so, or at least debated, let's just say that, in the Herald decision. So how can you really say that it has to have four sidewalls for it to be a burglary, given the current law of the Supreme Court? Because, again, I think that Stitt is discussing structures as defined by the Supreme Court, connected structures as defined by the Supreme Court. There's no indication in Stitt that it was limiting previous case law beyond the fact that it was just saying that Taylor's general statement that non-buildings don't count, that that has an exception, which is if non-buildings are used as a dwelling. But Stitt certainly didn't say, when it was sort of talking about impassing of pertinent structures, that it meant to include structures that are unenclosed. And Shepard was very clear about that. Shepard said APA only includes structures, buildings or structures that are enclosed. And to your point about risk, I do think that property crimes are going to fall on a spectrum of risk. So walking into someone's yard, which is discussed in James, that is on the lower end of risk, but of course does involve some risk of a violent confrontation, but not as much risk as if you climb through the window of someone's bedroom. So this is about drawing the line where burglary normally draws the line. And so we know from James that if you're just walking in someone's yard, that might be dangerous and it fell under the residual clause because it creates some risk of a violent confrontation. But it's not quintessential burglary. It's not what we consider generic burglary. So I'm not sure where the government is attempting to draw the line. If you walk on a patio, does it become burglary then because it's no longer the yard? There's at that point a structure. Is it if you walk on a deck? And I think that Shepard draws a really clear line that it's when you enter an enclosed space. And that makes sense with the type of conduct that generic burglary covers, because at its core, burglary is about breaking and entering or at least something like it is. They can't put it something along the lines of breaking and entering its unlawful entry into a building or enclosed space. It's not walking between two poles, picking something up and walking off. Those actions are fundamentally different from breaking and entering. And I do think that that understanding accords with congressional intent, because the fact that an offender enters a building is in an enclosed space with another person. That creates a greater possibility of a violent confrontation. And that was Taylor's wording, a greater possibility of a violent confrontation between the offender and the occupant. There's no means of quick escape. They're face to face with one another. Which is why I think the Supreme Court said that non-typical structures that are used as dwellings are going to count, because that's the type of place where you might encounter a person face to face, which isn't necessarily true of open spaces. And as James said, under generic burglary isn't true of an open yard. There's crimes that the Supreme Court describes as particularly purposeful, violent and aggressive. And I don't think that this court's case law either, in addition to Stitt, conflicts with that view. So the government suggests that Alvernos, for example, somehow held that unenclosed spaces count as long as they're physically touching a dwelling in some way. But I don't think that that's what that case held. And I don't think that it could, just like Stitt, in light of Shepard. Because Alvernos was analyzing whether the guidelines termed burglary of a dwelling, which no longer exists, included multi-use properties. I want to be sure we get to the prior issue of the rehave. Because obviously, if your client isn't convicted, then he doesn't get sentenced. And so let's turn to the rehave issue. And I just want to be sure. I do actually. Oh, I have one question on this. But I was trying to wait for you to get your questions answered. We can't use the Shepard documents because it's not divisible? Or what's the situation there? First of all, it's not divisible. So I think that that's the starting point. My memory also of the Shepard documents is that it wouldn't narrow anyway. But this statute is not divisible. This is just about the definition of dwelling. So there's nothing to even be divided, even if it were divisible, Your Honor. But I thought the documents show that it's Holmes. So he's convicted of burglary of a dwelling, which is just the name of the statute. But actually, I think they have addresses of particular homes that he burglarized. Absolutely, Your Honor. But under Louisiana law, so, for example, we're talking about walking into a carport, which we don't consider to be breaking and entering under the generic version of burglary. We would still list an address. The same would be the case under Florida law. For example, if you walked on the curtilage of a home, an address would be listed, but it wouldn't qualify. So there's nothing in those documents that say he went into the Holmes? I don't recall. Again, I don't I don't recall that there is. I believe you're right that there are addresses and dates, though. Again, I don't believe that the court can look to those shepherd documents to limit. If if you determine that Louisiana law is categorically not a violent felony. Does that answer the question? But if we don't, if it's divisible, then we could look at those. And this question is pertinent. Yes, if it is divisible, this court could use the modified categorical approach. And that solves all this problem. I think that theoretically, if the statute were divisible, that would solve the problem. But again, 1462.2, it's simple burglary of an inhabited home, which is entry of an inhabited dwelling house or apartment or structure. And the problem is with the way the Louisiana defines those terms. It's not with which one is being picked. Okay. Turn into your rehab argument that just changed suggested we needed to get to. How do you distinguish our post rehab opinions in Huntsbury and burden, both of which conclude that the defendant's substantial rights are not effective when the defendant has prior felony convictions and doesn't seem to depend upon whether or not he knew at the time. And the place that he had prior felony convictions. So I do think that in in these posts rehave decisions, there is some affirmative evidence relevant to the defendant's mental state at the time of possession. So, for example, in lovely Hicks and Brandon, which are all plea cases, I think it's really important to separate plea cases from trial cases, because it's going to be a different standard. It's going to be a lower standard in plea cases, which is whether there's a reasonable probability that the person is a plea case. Yes, you're right. Yes, there's a lower standard. There's a lower standard for for the rule for Rule 11 plain error under the third prong as opposed to trial. So trial is going to be the reasonable juror. Could any reasonable juror have found whereas in plea cases is it's is there a reasonable probability that the person wouldn't have pled. So, for example, in Brandon, which is a plea case, there was evidence of concealment of a weapon when approached by police, as well as documents showing that the person had been informed previously of their felon status in Hicks, which is the case that started all of this. There's a separate arrest for a felon in possession charge a few months earlier. As well, there's recorded phone calls reflecting knowledge of prohibited status. So in this case, there's not that affirmative evidence of contemporaneous knowledge of status. Let me ask you, that's what I wanted to ask. Okay, I want to make sure I have the facts right as I understand it. The charge here is based upon an event in 20 or events in 2016. And as of 2016, your client had served at least three years in prison during the years of 2010 to 2014. Is that correct? Am I correct on the facts? Yes, your honor. So, between 2010 and 2014, it seems he was it's a little confusing because he was in and out and it was parole being paroled and being put back in jail. But he was in and out of prison. And it's true that he was in jail. It appears from just the PSRs reflection on record page 209 that he was in jail from March 2011 to May 2014. Okay. And so here's and I did not see any indication that his mental state involved Alzheimer's or anything of that nature. So here's the bottom line. What LaValle says very clearly is, how would you forget that you've been in prison for several years? Okay. Now, I understand if you were 18 and you pled guilty to something, you got probation and now you're 60. Maybe you didn't realize that was a felony. I get that argument. This isn't that case. So, under what theory could we possibly say your client did not know he had been in prison for a few years for three years in 2016 when he was last out in 2014 when he does not have Alzheimer's or any other mental health issue. I agree with you that it's a steep climb. I think that there's less evidence of affirmative knowledge in this case than other cases, but it is true that he had had recent incarceration for longer than a year. We certainly don't deny that. I think one of the difficulties of applying plain error to a case like this is that we're trying to get into his head. Not just at the time of his possession, but at the time that he pled guilty. So we're trying to figure out what type of rational decision he would have made with additional knowledge. I think my point just about the Dominguez standard, that rule 11 third prong standard of reasonable probability, is just that we shouldn't be looking at the evidence in terms of acquittal, whether we think he would have been found not guilty. It's whether there's a reasonable probability that he would have just held the government to its burden to prove that additional element. Okay, but the problem is we would be I can understand why he doesn't like that. He pled guilty now because of the, but that isn't part of the consideration of the rehave issue. If we were not considering the ACCA, he got a lot of benefits from pleading guilty. By contrast, going in front of a jury where they get to where they have to put on all this evidence about all these burglaries he's committed one after another. But that's something he wants the jury to hear. Oh, yeah, make sure the jury knows I had 10 crimes felonies before this and spent three years in prison. But I want the jury to know that it's a little hard, particularly under a plain error standard to even envision that. So tell me how I can envision. And I see him out of time, but just just to answer your question, I do think that the outside factors about the circumstances of ACCA and the fact that he didn't have a plea agreement is a part of this calculation because we're looking at a time of plea. Does he have anything to lose by not pleading guilty? He did. This is a rare case where he was told ahead of time that he might be getting an ACCA enhancement. So he was aware of that. I don't think this is just post hoc being upset about that. And that's in the record. The district court told him that this is a rare situation where the district court actually warned him that he might be a sentence when he pled guilty. But so, again, I think that this is just a question of did he would he have had anything to lose? Because we do routinely tell clients all the time or we did pre rehab. They'll say, well, I didn't know. I didn't realize I didn't realize that that I was barred, that I was a felon. And we say, well, that's not something the government had to prove. Yeah, it's not that they don't realize they were a felon. They may not have realized it was a crime to be a felon holding a gun. But that is not what the state has to or the government has to prove. They just have to prove he knew he was a felon. I mean, it's Miss Rhodes. You need to wrap it up. Yeah. Yeah. Yes. I agree with you. The only thing I'm saying is that it's a question of him balancing him making a rational decision at the time of plea, not whether he would be found guilty. But I agree with you that it's a steep climb on plein air, which is why we believe it's structural. OK, thank you, Mr. McLaurin. You may proceed. Thank you, Your Honor. May it please the court. Good morning. My name is Ryan McLaurin. I represent the United States and I'm joined off screen this morning by Brittany Reed, who is trial counsel in this case. I want to start with the the issue that you all were just discussing. And to my knowledge, there has not been a case that this court has decided where it's vacated, either a guilty plea conviction or a trial conviction because of a right. Error. Judge Alrod, you cited to Huntsbury into another case involving a trial. And in our 28 J letter, we cited the Hicks, which I think is a case that bears directly on this. And Hicks, the court looked at evidence in the PSR. It looked specifically at the sorts of things that Judge Haynes, you were talking about, the multiple convictions. In this case, it's eight prior felony burglary convictions, including seven in Louisiana and one in Mississippi, and then also the amount of time that the defendant spent in jail. So this really would be a peculiar case to be the first one to have a conviction vacated just based on that evidence, which is similar to the evidence that was relied on in Hicks. I want to move on to the burglary issue. And the first thing that I need to address here is that I think that opposing counsel has taken something that we said in our brief out of context. We do not concede that whatever the building or the structure of the enclosure at issue is needs to be enclosed. Opposing counsel has relied on a statement in Shepard. And so a couple of problems with that. One is that Shepard wasn't a case where really the definition of burglary was an issue. Shepard obviously was about some other things. And the specific line here is a line at the beginning of the very first paragraph of the decision. It's just the sort of throwaway line talking about what burglary is. The act makes burglary a violent felony only if committed in a building or enclosed space, parentheses generic burglary, not in a boat or motor vehicle. So my reading of Shepard is that it not that it is changing any of the Supreme Court's prior definitions of burglary, not that it's adding some extra requirement to tailor that wasn't there before. In fact, my reading of Shepard and the way that some other federal courts have applied it is that it actually extends the definition of burglary, that burglary is a building, a structure or an enclosed space. And I cite to one decision by the Seventh Circuit. It's not in any of the briefing, but if you want an example of that, it's United States versus Perry. And the citation is 862 F3rd 620. That's the Seventh Circuit from 2006. Why are you citing a case that's not in your brief? Did you provide it to Ms. Rhodes before the argument today? Your Honor, I haven't, but I wasn't anticipating having to respond to this enclosed space argument. I can move on. That's fine. No, I'm just, you know, the rule is, is if you don't have something in your brief, you're supposed to provide it to opposing counsel. Now, I grant it that you can't hand it across the table to her or out in the hall while you're waiting, but you've been in the waiting room for at least 15 minutes, maybe 30 minutes this morning. And you didn't say I have this other case. It's not in my brief, but you had it really handy in case you needed it for argument. So that's not appropriate. Yes, yes, ma'am. And I apologize. I can move on. Okay, Ms. Rhodes, you can follow 28 J to respond to this case from the Seventh Circuit if you so choose, but you are not required to Mr. McLaurin. You may continue. Thank you, Your Honor. I do want to respond to something that Judge Haynes that you discussed that was an issue in the state case and opposing counsel discuss it as well. And it's that the dangerousness part of this, the dangerousness part of burglary, the risk that there's going to be some kind of an encounter. My understanding of that is that the dangerousness is more of a policy reason for why burglary is included. It's not an element of burglary that Taylor has said, you know, and in fact, Taylor explicitly rejected that. It said that we are not going to create a subset of burglary crimes, the most dangerous subset of burglary and limit the definition of burglary to that to that that Taylor recognized. I wasn't saying it limits it. I was saying it explains why the pertinent to would cover a carport and why that is why it covers the carport because the basic core of this whole generic burglary notion is trying to prevent. So somebody thinks I'm on vacation and wants to just come steal stuff from my house, but it turns out because of covid I canceled my vacation and here I am. Now we're going to have an encounter that may lead to something far worse than having my, you know, stuff, whatever it is stolen. Right. So that's what I was trying to explain is my understanding of why instead they essentially said, yes, a vehicle that is an inhabited space is cover. And I think that that's exactly right. And I think that that plays out in the Louisiana cases cited by opposing counsel in all but one of those cases. We're talking about structures that are part of the dwelling. They're part of the house. We're talking about a carport that's under the roof line of the house. It is essentially another room on the house. It's part of the dwelling. And another one of the cases talks about a totally screened in porch with the doors that lead to the kitchen and to the bathroom. Again, it's part of the house. The only case that opposing counsel sites where it's it's a structure that is not part of the same building that doesn't fall under the roof line is the case from the state Fourth Circuit. And that's the case that involves the shed. And at a minimum, the shed is pertinent to this house. It also the Fourth Circuit, the state Fourth Circuit noted falls within. It's on a property that is completely surrounded by a six foot fence. So for all of those reasons, at a minimum, that building is a structure for purposes of Taylor. It's a pertinent to the house, which the Supreme Court instead said no problem with that. It's an enclosed space. In my experience, the shed is an enclosed space. It's a structure. There's a lot of different ways to go about this, but the shed counts under the federal generic definition of burglary. Um, we mentioned this in our brief. This court has affirmed state state Louisiana 62.2 twice before. Um, it's both of those were under the more narrow, uh, way to use burglary, burglary of a dwelling in the guidelines formerly in the guidelines. This court should do the same here. And if there's no other questions about burglary, I'd ask that this court please affirm. Thank you. Thank you. We have your argument. Miss Rose, do you have rebuttal? Yes, Your Honor. Briefly, I wanted to address the government suggestion that this idea of enclosure is sort of a throwaway line and shepherd. Um, the, the, uh. The Black's Law Dictionary definition of burglary of a dwelling, for example, which is cited by this case in Albernos and is sort of throughout all of these cases, um, specifically says, uh, as part of its definition that it's things like a building, um, a structure used for inhabitation or an enclosed or other enclosed space. So Black's also incorporates this idea that these are enclosed spaces. Um, and that's true throughout the law. We're talking about tents. We're talking about vehicles, even things that are non buildings are enclosed. That also accords with the model penal code definition, which is cited both in Taylor and Albernos, which provides three categories of places that can be burglarized. So your run of the mill building, your brick and mortar building, um, which no one disputes is included an occupied structure. So that's where STIT expands non buildings to burglary. So things like tents that are used, um, for, for a dwelling. And then the last category is a separately secured or occupied portion thereof. Um, and that includes garages. So things that are separately secured and that accords with this just general understanding of burglary as breaking and entering. I would also just warn that I do think that the government's interpretation in this case sort of quietly expands the scope of generic burglary, not just so it would include Louisiana law, but it would include state laws that aren't called burglary. Because under the categorical approach, we don't just look at the title. We look at the actions. So this would include going up to someone's front stoop and just taking a package off of it. This would include reaching your hand into someone's mailbox that's attached to their house. That is fundamentally not breaking and entering. And it also sort of starts to blur the line between curtilage and going into the dwelling itself, which I think is the easiest and the best distinction between burglary and non and non burglary. And if the court doesn't have any questions, I'll leave the rein during my time. Thank you very much. This case is submitted. We appreciate the arguments of both counsel. Thank you.